**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | |
|---|---|
| Nation's Capital Student | ) |
| Services, LLC | ) |
| 8181 Professional Place | ) |
| Suite 170 | ) |
| Hyattsville, Maryland  20785 | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| Night Owls USA, LLC | ) |
| 9661 Lynchburg Place | ) |
| Waldorf, Maryland  20603 | ) |
| | ) |
| Ryan Whitfield | ) |
| 8313 Telegraph Road | ) |
| Odenton, Maryland 21113 | ) |
| | ) |
| Defendants | ) |
| _____ | ) |

**COMPLAINT**

Nation's Capital Student Services, LLC d/b/a Student Watchers ("NCSS"), for its

complaint against defendants Ryan Whitfield ("Whitfield") and Night Owls USA, LLC

("Night Owls") alleges as follows:

**PARTIES**

1.  Plaintiff NCSS is a limited liability company organized and existing under the laws of

the State of Maryland, with its principal place of business in Hyattsville, Maryland.

2.  Defendant Whitfield is an individual, who is a citizen of the State of Maryland, and has an address of 8313 Telegraph Road, Odenton, Maryland 21113 and another address of 6840 Jade Street, Seat Pleasant, Maryland 20743.

3.  Defendant Night Owls is a Maryland limited liability company having an address of 9661 Lynchburg Place, Waldorf, Maryland  20603.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

5.  This Court has personal jurisdiction pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), (c) and 1400(a) since it is the judicial district in which Defendants reside and conduct continuous and systematic business and have caused the injuries complained of herein.

## STATEMENT OF FACTS

### A.  Plaintiff's and Its Products

7.  NCSS is a small business founded by Victor Watson, a former police officer and current 17 year licensed school safety and security officer, for the purpose of providing overnight chaperone services for traveling youth groups, including but not limited to, student groups, athletic teams, music groups and faith based youth groups traveling to the Washington, D.C., New York City and Orlando, Florida metropolitan areas as well as other metropolitan areas.

8.  Mr. Watson began offering student chaperone services in 2001 and registered NCSS as a Maryland limited liability company in 2009.

9.  Through its first rate service, NCSS has developed a reputation for integrity and excellence among tour operators, school personnel and hotels across the United States and Canada.

10.     To address its rapidly growing business needs, on or about mid 2009 Mr. Watson began having discussions with his cousin, Whitfield, about working with NCSS.

11.     Whitfield had no prior experience in the student safety or student travel night chaperone industry but he had an education in computer science.  Mr. Watson thought that the combination of his student safety and travel industry experience and Whitfield's computer experience would be beneficial to NCSS' automation and growth initiatives.

12.     In 2009 NCSS undertook an effort to develop a business management software tool to automate its operations.   That effort included Mr. Watson spending countless hours educating Whitfield about NCSS' business operations and Whitfield interfacing with software coders to oversee and manage the coders' project of coding a business management tool to automate NCSS' operations.

13.     On or about July 29, 2011, Whitfield became a member of NCSS and signed an Operating Agreement.

14.     The Operating Agreement obligates Whitfield to maintain confidentiality of NCSS' trade secrets and confidential information.

15.     One of Whitfield's duties at NCSS was software development.  When he was hired, it was expected that Whitfield would be in charge of implementation of NCSS' business management software tool.

16.     The business management software tool that was initially developed in 2009 had significant shortcomings. Beginning in late 2011 to early 2012, NCSS made material

3

modifications and improvements to its business management software tool.  NCSS

expended substantial time, money and resources in improving its business management

software tool to enhance its ability to manage the day-to-day operations of the business.

17.     The NCSS business  management software tool contains, but is not limited

to, trade secrets in the form of data relating to NCSS' clients such as client contact

information, data indicating previous services provided to each client, the fees NCSS

charged each client for serviced provided, future forecast information for each client,

specific requests each client required, each client's payment history and each client's

comment/concerns for future services, data relating to NCSS agents such as contact

information and agent compensation, and data relating to NCSS alliance partners including

compensation information.

18.     The NCSS business management software further includes, but is not limited

to, trade secrets in the form of algorithms for pricing, for locating lodging, scheduling

algorithms, and algorithms that allow the user to monitor multiple agents simultaneously.

19.     The NCSS business management software tool and the data contained therein

is vital to NCSS' business operation, and was designed specifically for NCSS' business

operations and is closely guarded by NCSS.

20.     Only NCSS' members have full access to the NCSS business management

software tool and the data contained therein. A select few employees of NCSS have limited

access to the information contained within the NCSS business management software tool.

21.     As a member of NCSS, Whitfield had administrative level access to the

NCSS business management software tool.  In fact, Whitfield was the person at NCSS

most knowledgeable about software and other IT matters.  Whitfield was a frequent and

regular user of the NCSS business management software tool and became intimately familiar with its operation and content.

22.     NCSS has gone to great lengths to guard the secrecy of the data contained within the NCSS business management software tool by, for example, limiting the number of employees authorized to access the information and implementing significant IT security protocols.

23.     The NCSS business management tool is not generally available to the public; NCSS clients who register and are approved are granted limited access.  NCSS Agents are also granted limited access.

24.     Employees are obligated to protect all NCSS proprietary information from unauthorized disclosure or use according to the NCSS Employee Handbook which is distributed to all employees.

25.     As a member of NCSS, Whitfield had a fiduciary duty to protect NCSS' trade secrets and confidential information.

26.     Competing chaperone services could not duplicate the NCSS business management software tool and the proprietary information contained therein without expending substantial time and expense.

27.     Any competitor that gains improper access to the NCSS business management software tool and the information contained therein would acquire sufficient know how to operate a competing chaperone service with minimal effort and expense. Specifically, for example, any competitor with access to NCSS' business management software tool would have information regarding the identity of NCSS's clients, the services NCSS provides to its clients and the fees charged for those services.  A competitor could

use that information to solicit business from NCSS' clients and undercut NCSS' pricing structure.

28.     The NCSS business management tool has been a tremendous success because of the benefits that it provides to NCSS as well as to its clients, agents and alliance partners.

29.     NCSS is the owner of Copyright Registration No. TXu-1-967-294 covering its business management software tool.  A true and correct copy of the Copyright Registration is attached hereto as Exhibit A.

30.     Effective on or about October 9, 2014, Whitfield's relationship with NCSS was terminated.  Whitfield's membership in NCSS was withdrawn and he was effectively fired as an employee.

31.     After his termination, Whitfield continued to access the NCSS business management software tool including its proprietary databases without permission from NCSS.

32.     Less than one month after his relationship with NCSS was severed, Whitfield helped found the Night Owls to directly compete with NCSS in the night chaperone industry.

33.     Upon information and belief, Whitfield is currently the CEO of Night Owls.

34.     Upon information and belief, Whitfield has used and continues to use information wrongfully taken from NCSS' databases to solicit current and former clients of NCSS and to otherwise perform his duties at Night Owls.

35.     Upon information and belief, Whitfield has disclosed and continues to disclose information wrongfully taken from NCSS' databases to Night Owls' employees, contractors, clients and consultants.

36.     Upon information and belief, Whitfield provided a copy and/or derivative of the NCSS business management tool to Night Owls.

37.     Upon information and belief, Night Owls is presently using a copy or derivative of NCSS' business management software in its business operations.

38.     Upon information and belief, Night Owls has used and continues to use information taken from NCSS' databases to solicit current and former clients of NCSS and to otherwise operate its business.

39.     On or about January 5, 2016, NCSS sent correspondence to Night Owls requesting review of Night Owls software and directing Night Owls to preserve electronic records.  A true and correct copy of the correspondence is attached hereto as Exhibit B.

40.     Night Owl did not respond to the January 5, 2016 correspondence.

41.     On or about January 28, 2016, NCSS sent a second letter to Night Owls inviting a response to NCSS' allegations of copyright infringement.  A true and correct copy of the January 28, 2016 letter is attached hereto as Exhibit C.

42.     Night Owls has not responded to the January 28, 2016 letter.

**COUNT I – COPYRIGHT INFRINGEMENT**

43.     NCSS repeats and reaffirms all of the allegations contained in the preceding paragraphs numbered 1 through 42, with the same force and effect as if fully set forth herein.

44.      As the owner of the Copyright Registration No. TXu-1-967-294 for its business management software tool, NCSS has the exclusive right to reproduce, to prepare derivative works based on, to distribute copies of, and to publicly display the NCSS business management software tool.

45.      On information and belief Defendant Whitfield has infringed NCSS' copyright in the NCSS business management software tool by copying, distributing and/or making a derivative work of the NCSS business management software tool in violation of 17 U.S.C. § 101 *et seq.*

46.      On information and belief Defendant Night Owls has infringed NCSS' copyright in the NCSS business management software tool by copying, distributing and/or making a derivative work of the NCSS business management software tool in violation of 17 U.S.C. § 101 *et seq.*

47.      NCSS has been damaged as a result of Defendants' use of NCSS's business management software tool and will continue to be damaged unless Defendants are preliminarily and permanently enjoined by this Court from such activities in the future.

48.      NCSS is entitled to recover from Defendants the damages NCSS has sustained and will sustain, and any gains, profits and advantages obtained by Defendants as a result of Defendants' acts alleged herein pursuant to 17 U.S.C. § 504.

49.      NCSS is also entitled to an injunction prohibiting Defendants from further infringement pursuant to 17 U.S.C. § 502.

**COUNT II – VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT**

50.     NCSS repeats and reaffirms all of the allegations contained in the preceding paragraphs numbered 1 through 49, with the same force and effect as if fully set forth herein.

51.     Upon information and belief, Defendant Whitfield, as CEO of Night Owls, is directly engaged in competitive efforts against NCSS.

52.     Defendant Whitfield learned of NCSS' trade secrets while he was associated with NCSS.  Defendant Whitfield knew or should have known that NCSS' trade secrets were vital to the commercial success of NCSS and were closely guarded as secret information by NCSS.

53.     Defendant Whitfield has violated and inevitably will continue to violate his duties by disclosing and using NCSS' trade secrets and other proprietary business information for the benefit of Night Owls in violation of the Maryland Uniform Trade Secrets Act.

54.     Night Owls improperly acquired and used NCSS's trade secrets and proprietary business information obtained from Whitfield while knowing or having reason to know that NCSS' trade secrets and proprietary business information were acquired by improper means.  Night Owls has actively sought this information and directly benefited from the willful and malicious acts of Whitfield.

55.     Night Owls knew or should have known that Whitfield owed a duty to NCSS to maintain the secrecy of NCSS' trade secrets and proprietary business information.

56.     As a direct and proximate result of Nigh Owls' violations of the Maryland Uniform Trade Secrets Act, NCSS has suffered, continues to suffer, or imminently will suffer irreparable damage to its business and to its goodwill.

## JURY DEMAND

NCSS hereby demands a trial by jury in this action of all issues so triable.

## REQUESTED RELIEF

WHEREFORE, Plaintiff NCSS requests judgment as follows:

## COUNT I – COPYRIGHT INFRINGEMENT

A.      That Defendants be preliminary and permanently enjoined, together with their respective officers, agents, servants, employees, assigns, successors, and attorneys, and all other persons acting in active concert or participation with them from copying, distributing, displaying and making derivative works of NCSS' business management software tool;

B.      That Defendants be ordered to deliver up for impoundment pursuant to 17 U.S.C. § 503 all materials incorporating copies of NCSS' business management software tool and deliver for destruction all infringing copies and all plates, molds, matrices, masters, tapes, film negatives, or other articles by which infringing copies may be reproduced;

C.      That  NCSS be awarded all damages sustained by NCSS in consequence of Defendants' copyright infringement; and

D.      That NCSS be awarded any other and further relief as is just.

## COUNT II - VIOLATION OF MARYLAND UNIFORM TRADE SECRETS ACT

E.      That the Court impose on Defendant Night Owls a constructive trust comprised of all of the unearned revenue and earned profits obtained by virtue of their use of NCSS' trade secrets and confidential business information in operation of Night Owls business.

F.      That NCSS be awarded all damages to which it is entitled pursuant to Md. Code Ann., Com. Law § 11-1203;

G.      That NCSS be awarded its attorney's fees under Md. Code Ann., Com. Law § 11-1204;

H.      That Defendants be preliminarily and permanently enjoined from disclosing, using, or seeking to obtain NCSS's trade secrets and confidential business information;

I.      That the Court award NCSS such other relief as the Court may determine is appropriate.


                                        Respectfully submitted,


                        _____/S/_____
                        Frederick N. Samuels, Esq., Trial Bar #14027
                        CAHN & SAMUELS, LLP
                        1100 17th Street N.W., Suite 401
                        Washington, D.C. 20036
                        (202) 331-8777
                        (202) 331-3838 (Facsimile)
                        Frederick.Samuel@cahnsamuels.com


                        ATTORNEYS FOR PLAINTIFFS
                        Nation's Captial Student Services, LLC